IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OMNIBUS TRADING, INC., | § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 3:18-CV-02598-N |
| GOLD CREEK FOODS, LLC, | § § § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Gold Creek Foods, LLC's ("Gold Creek") motion to dismiss, or in the alternative, to transfer venue [9]. Because the Court holds that the parties' agreement includes a valid and applicable forum selection clause, the Court grants Gold Creek's alternative motion to transfer the action to the U.S. District Court for the Northern District of Georgia.

## I. ORIGINS OF THE DISPUTE

Gold Creek is a Georgia corporation. It specializes in deboning and processing poultry. Just before getting in touch with Plaintiff Omnibus Trading Inc. d/b/a Chef's Corner ("Chef's Corner"), it expanded to prepare ready-to-eat, fully cooked chicken products. Chef's Corner is a California corporation that supplies fully cooked food products to schools around the country. The two had obvious business potential: Gold Creek could process, cook, and package chicken products that Chef's Corner could then ship to schools nationwide. In September 2017, the parties began negotiating an agreement to do just that.

This dispute regards the details of that agreement. Chef's Corner claims that it lacked notice of Gold Creek's terms and conditions, that Gold Creek made fraudulent misrepresentations about its capability to handle Chef's Corner's orders, and that Gold Creek breached the parties' agreed upon pricing structure. It sues Gold Creek under a variety of breach of contract and fraud theories. Gold Creek now moves to dismiss the claims under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), or to alternatively transfer the action to Georgia under 28 U.S.C. § 1404(a) ("section 1404(a)").

## II. Legal Standard Under Section 1404(a)

Section 1404(a) "provides a mechanism for enforcement of forum selection clauses that point to a particular federal district." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). Federal law applies to the enforceability determination of a forum selection clause "whether jurisdiction be based on diversity, a federal question, or some combination of the two." *Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997). It is well established that forum selection clauses are valid and enforceable under federal law "absent a showing of unreasonableness under the circumstances." *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1 (1972).

Chef's Corner's theory is that Gold Creek unreasonably communicated the clause. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991). When considering whether a forum selection clause was communicated reasonably, courts look at both the "facial clarity of the contract" and the "plaintiff's familiarity with the contract and its ability to become meaningfully informed of the contractual terms at stake." *Flowserve Corp. v.*

*Hallmark Pump Co.*, 2010 WL 2232285, at *2 (S.D. Tex. Feb. 3, 2010). The key is whether the plaintiff is given "some notice of the existence of the service agreement to which [it] is assenting." *Id.* at 4.

If valid, the forum selection clause applies to all claims that "arise out of the contractual relationship and implicate the agreement." *Demond v. Infiniti HR, L.L.C.*, 2018 WL 4145053, at *4 (N.D. Tex. Aug. 30, 2018). The applicability of the clause "depends on whether the resolution of the claims relates to interpretation of the contract." *Id.* (quoting *Pinnacle Interior Elements, Ltd. v. Panalpina, Inc.*, 2010 WL 445927, at *5 (N.D. Tex. Feb. 9, 2010)).

Normally, section 1404(a) motions require district courts to evaluate and balance a host of private and public interest factors.[1] The presence of a valid, applicable forum selection clause changes the calculus in two ways: (1) the plaintiff's choice of forum is accorded no weight, and (2) the Court must deem the private interest factors entirely in favor of the preselected forum and only consider public interest arguments against transfer. *Atl. Marine*, 571 U.S. at 63-64. The "practical result" of these changes "is that forum selection clauses should control except in unusual cases." *Id.* at 64. The party challenging the forum

---

[1] Private interest factors include access to sources of proof, availability of witnesses, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Atl. Marine*, 571 U.S. at 62, n.6 (citing *Piper Aircraft Co. v. Reyna*, 454 U.S. 235, 241, n.6 (1981)). Public interest factors include relative court congestion, "the local interest in having localized controversies decided at home, [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.*

selection clause "bears the burden of showing that the public interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67.

### III. THE COURT GRANTS GOLD CREEK'S MOTION TO TRANSFER

#### A. *The Forum Selection Clause is Valid*

A close look at the clause here reveals that it was reasonably communicated. The written agreement at issue is titled the Credit Application and Open Account Agreement ("the Agreement"). The Terms and Conditions to the Agreement appear in three paragraphs just above the signature line on page two. Decl. Of Colton Cuny, Ex. C, [9-2]. The second paragraph includes a link to the General Terms and Conditions of Sale for Gold Creek, and states that those terms are incorporated into the Agreement. *Id.* Clicking on the link and scrolling to page three reveals the forum selection clause. *Id.*, Ex. D, [9-2]. Discovering the clause requires due diligence, but it is by no means concealed to the extent of being unenforceable. *See, e.g., Flowserve*, 2010 WL 2232285 (holding the forum selection clause was not reasonably communicated because it was included in terms sent to plaintiff after payment).

#### B. *The Forum Selection Clause Applies to All of Chef's Corner's Claims*

All of Chef's Corner's claims arise out of the terms and conditions incorporated into the Agreement. Chef's Corner's breach of contract and fraud claims concern Gold Creek changing its price and fulfillment expectations. But Gold Creek believes everything it did was in accordance with the terms and conditions. The Agreement was the first articulation

of the terms that would guide the relationship between these parties. All of Chef's Corner's claims ultimately stem from that original agreement, and cannot be resolved without wrestling with the construction of the terms and conditions Gold Creek claims it abided by. Accordingly, the Court holds that the forum selection clause apples to the entire dispute.

### C. Chef's Corner Has Not Established that Transferring the Case Would Violate the Public Interest

The burden is on Chef's Corner to show that the public interest factors "overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67. Chef's Corner does not engage in an analysis of the public interest factors. Instead, it argues that the issue is decided by the strong interest in providing a forum for a resident corporation harmed by an intentional tort. This interest is indeed important. But the Court does not believe that this alone overwhelmingly suggests the case should remain in Texas — especially given the extensive connections this case has to Georgia.

### CONCLUSION

For the reasons above, the Court grants Gold Creek's alternative motion to transfer, and transfers this matter to the U.S. District Court for the Northern District of Georgia pursuant to section 1404(a).

Signed July 30, 2019.

_____
David C. Godbey
United States District Judge